UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DUANE HORTON, Plaintiff, | : | |
| v. | : | CA 05-247 T |
| PORTSMOUTH POLICE DEPARTMENT, et al., Defendants. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the court is the Motion for Remand to State Court (Document ("Doc.") #6) ("Motion to Remand" or "Motion") filed by Plaintiff Duane Horton ("Plaintiff"). Defendants have filed objections to the Motion. See Defendants', [sic] Portsmouth Police Department, Michael Arnold, Anthony Cambrola, Garrett Coyne, Robert Driscoll, Jeffrey Furtado, Steven Hoetel, Harry Leonard, Alberto Bucci and Dennis Seale's Objection to Plaintiff's Motion to Remand (Doc. #11) ("Town Defendants' Objection"); Defendant Josephine Horton's Objection to Plaintiff's Motion to Remand[,] (Doc. #14) ("Defendant Horton's Objection").

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and D.R.I. Local R. 32(c).[1] A hearing was held on July 20, 2005. After listening to oral argument, reviewing the

---

[1] At the July 20, 2005, hearing the court noted that motions to remand are sometimes viewed as dispositive and sometimes as non-dispositive in nature. A dispositive motion may be referred to a magistrate judge only for findings and recommendations. See 28 U.S.C. § 636(b)(1)(B); D.R.I. Local R. 32(c)(1). A non-dispositive motion may be referred for determination. See 28 U.S.C. 636(b)(1)(A); D.R.I. Local R. 32(b). Here, Chief Judge Ernest C. Torres has referred the Motion to Remand for findings and recommended disposition.

memoranda submitted, and performing independent research, I recommend that Plaintiff's Motion to Remand be denied.

**Facts[2] and Travel**

Plaintiff is a licensed professional engineer. He has been employed since 1984 by the United States Naval Undersea Warfare Center in Newport, Rhode Island, and has resided in the town of Portsmouth for sixteen years. Defendant Josephine Horton ("Defendant Horton") is the estranged wife of Plaintiff. The other individual Defendants include the Town Administrator of the Town of Portsmouth, the Chief of Police of the Town of Portsmouth, and officers and/or officials of Defendant Portsmouth Police Department (the "Town Defendants") at the time of the events at issue.

Plaintiff states that he and Defendant Horton have been married since June of 1993. Since March 27, 2003, however, they have been parties to divorce litigation. According to an order entered in Newport County Family Court on April 23, 2003, Plaintiff and Defendant Horton were permitted to continue living in separate apartments within the marital domicile located at 74 Willow Lane, Portsmouth, Rhode Island, and custody of the couple's two children was to be shared jointly pending the outcome of the divorce action, with Defendant Horton having physical possession of the children and Plaintiff having reasonable rights of visitation. Plaintiff and Defendant Horton agreed that Plaintiff would have visitation with the children every other weekend.

Plaintiff alleges that on the morning of Saturday, July 24, 2004, he expected to begin visitation with the children, then ages six and nine. Defendant Horton sent a handwritten message to Plaintiff via the couple's daughter indicating that the

[2] The facts are taken from the Complaint.

children would not be allowed to visit with Plaintiff unless he agreed to the condition that they have a cellular telephone during the visit so that they and their mother could call each other at any time. Plaintiff refused to accept this condition, and Defendant Horton ordered the children to return to her residence.

Shortly thereafter, outside the house, Plaintiff took the children by their hands and placed them in his automobile. Defendant Horton then called 911 on her cell phone, allegedly telling the Portsmouth Police Department dispatcher that she had full or sole custody of the children and implying that Plaintiff was in violation of a court order. Meanwhile, Plaintiff began backing his car out of the driveway, which Defendant Horton blocked. Plaintiff backed out of the driveway slowly, so as not to harm Defendant Horton, and drove off with the children to continue the visitation. According to Plaintiff, at some point Defendant Horton also called the Department of Children, Youth, and their Families ("DCYF") child abuse hotline and reported that Plaintiff had violated a visitation arrangement, had threatened to spank his daughter if she possessed a cell phone, and was otherwise abusive.

Officers of the Portsmouth Police Department subsequently responded to the Willow Lane residence. The officers took a report from Defendant Horton, and an arrest command was issued to all Rhode Island police agencies. At approximately 9:00 p.m. on July 24th, certain Portsmouth Police officers arrested Plaintiff for felony domestic assault. As a result of his arrest, Plaintiff alleges that a no-contact order, preventing Plaintiff from contacting his wife, was issued, he was compelled to move out of his home and rent housing elsewhere, he was forced to hire legal counsel, and his Navy security clearance and career were placed in jeopardy. All charges relating to the arrest were dismissed by the Office of the Attorney General on or about

January 22, 2005.

On July 26, 2004, Defendant Horton initiated a civil complaint, seeking to keep Plaintiff away from herself and the children, in Rhode Island Family Court based on the July 24th events. Between July 24, 2004, and May, 2005, Plaintiff sought to obtain police reports and statements regarding the July 24th incident in order to prepare for hearings in Newport County Family Court. According to Plaintiff, the failure to timely provide the documents to Plaintiff caused repeated delays of Family Court hearings, resulting in Plaintiff being denied visitation with the children for more than eight months. By the time the documents were produced to Plaintiff, he had already suffered prejudice to his property and liberty.

Plaintiff filed a complaint in Rhode Island Superior Court, Newport County, on or about May 24, 2005. See Complaint and Demand for Jury Trial (Doc. #1) ("Complaint"). The Complaint contains the following counts: Count One: False Arrest; Count Two: False Imprisonment; Count Three: Tortious Denial of Access to Public Records Lawfully Sought; Count Four: Violation of Civil Rights; Count Five: Violation of Civil Rights by Failure to Train and Failure to Supervise; Count Six: Tort of Outrage/Attempt to Frame; Count Seven: False Reporting; Count Eight: Malicious Prosecution; and Count Nine: Abuse of Process. See Complaint at 7-11.[3] The Complaint alleges violations of Plaintiff's rights under the state and federal constitutions as well as under state and federal statutes. See id.

The Town Defendants filed a Petition for Removal (Doc. #2) on June 7, 2005, based on this court's original jurisdiction. See Petition for Removal ¶ 3. Defendant Horton subsequently also

---

[3] Counts One, Two, Four, and Six are brought against all Defendants. See Complaint at 7-10. Counts Three and Five are brought against the Town Defendants. See id. at 8-9. Counts Seven through Nine name Defendant Horton only. See id. at 10-11.

filed a Petition for Removal (Doc. #7). Plaintiff on June 13, 2005, filed the instant Motion to Remand (Doc. #6). On June 23, 2005, the Town Defendants filed their objection to the Motion. See Town Defendants' Objection (Doc. #11). Defendant Horton filed hers on June 28, 2005. See Defendant Horton's Objection (Doc. #14). The court conducted a hearing on July 20, 2005, and the Motion was taken under advisement.

**Discussion**

Plaintiff argues "that jurisdiction in this federal court is improper, unlawful, and inconvenient for all parties and that the grounds for removal stated by the Defendants are unfounded." Motion to Remand at 1-2. The Town Defendants counter that:

> [T]his matter was properly removed based on this Court's original jurisdiction. In light of the fact that the scope of the issues, damages and evidence in support of the claims are all essentially the same, plaintiff's state law claims do not predominate the instant cause of action. In addition, plaintiff's claim under [the] Rhode Island Access to Public Records statute does not involve such a novel or complex issue such to warrant remand of the instant matter.

Defendants', [sic] Portsmouth Police Department, Michael Arnold, Anthony Cambrola, Garret Coyne, Robert Driscoll, Jeffrey Furtado, Steven Hoetel, Harry Leonard[,] Alberto Bucci and Dennis Seale Memorandum of Law in Support of Objection to Motion to Remand ("Town Defendants' Mem.") at 1-2 (citation omitted).

**I. Jurisdiction over Plaintiff's Federal Claims**

According to 28 U.S.C. § 1441: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (2005); see also

Shepard v. Egan, 767 F.Supp. 1158, 1161 (D. Mass. 1990)("In short, this Court is without discretion with regard to the removal of claims from the state courts, where this Court would have had original jurisdiction over the claims had plaintiff brought suit here initially. The choice of forum under these circumstances belongs to the defendant, not to the plaintiff or the Court."). "It is well settled that the removal statutes must be strictly construed; a federal court may encroach upon a state court's right to hear and determine cases properly brought in a state forum only in fidelity to the express authority granted by Congress." Gorman v. Abbot Labs., 629 F.Supp. 1196, 1198 (D.R.I. 1986)(citing, inter alia, Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941)).

Plaintiff does not, and cannot, dispute that this court possesses original jurisdiction over his federal constitutional and statutory claims. See Brief in Support of Motion for Remand to State Court ("Plaintiff's Mem.") at 2-3. Section 1331 of Title 28, United States Code, provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331 (2005). Plaintiff's Complaint alleges violations of his rights under the Fourth, Sixth, and Fourteenth Amendments to the U.S. Constitution, see Complaint at 7 (Count One) (Fourth and Fourteenth); id. at 8 (Count Two) (Fourth and Fourteenth); id. at 9 (Count Four) (alleging due process violations under the United States Constitution); id. at 10 (Count Six) (Fourth, Sixth, and Fourteenth), as well as federal statutes, see Complaint at 9 (Count Four) (alleging violations of his civil rights "[u]nder federal authority of 42 U.S.C. Section 1981 et seq."); id. (Count Five) ("This also violated 42 U.S.C. Section 1981 et seq."). These claims clearly arise under the Constitution or laws of the United States. See Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81

L.Ed. 70 (1936)(noting that a case arises "under the Constitution or laws of the United States" when "a right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action"); Murphy v. Bd. of Educ. of City of St. Louis, 455 F.Supp. 390, 391 (E.D. Mo. 1978)("If the adjudication of a claim depends upon the application of either the Constitution or laws of the United States, the entire case is removable. Since Plaintiffs are clearly alleging violations of the 14th Amendment and of various provisions of the civil rights acts of Title 42, those federal claims may be removed.")(citations omitted).

Plaintiff, nonetheless, contends that "where Congress has provided for concurrent jurisdiction in state and federal courts [as here], the claim may be asserted in either court and removal on the basis of federal question jurisdiction is precluded." Plaintiff's Mem. at 4 (citing Salveson v. W. States Bankcard Ass'n, 525 F.Supp. 566, 573 (D.D.C. 1981))(alteration in original). It is true, as Plaintiff states in his memorandum, see Plaintiff's Mem. at 3 (citing Martinez v. California, 444 U.S. 277, 283-84, 100 S.Ct. 553, 558, 62 L.Ed.2d 48 (1980) (addressing § 1983 claim which was asserted in state court); Long v. Dist. of Columbia, 469 F.2d 927, 937 (D.C. Cir. 1972)("State courts do, however, have concurrent jurisdiction over § 1983 civil actions")), that federal and state courts possess concurrent jurisdiction over section 1983 claims.[4] The fact that concurrent jurisdiction exists, however, does not deprive this court of jurisdiction over Plaintiff's federal claims.

In Dorsey v. City of Detroit, 858 F.2d 338 (6th Cir. 1988),

[4] Plaintiff in his Complaint does not refer specifically to § 1983, but, rather, to "42 U.S.C. Section 1981 et seq.," Complaint at 9. Plaintiff's citation to "42 U.S.C. Section 1981 et seq." is problematic because it is unclear which statute Plaintiff is invoking as the basis for his cause of action.

the Court of Appeals for the Sixth Circuit expressly rejected the same argument based on Salveson, see id. at 340-41, that Plaintiff makes here. The Sixth Circuit stated that "[t]he weight of judicial authority supports the conclusion that 'a Congressional grant of concurrent jurisdiction in a statute does not imply that removal is prohibited.'" Id. at 341 (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3729, at 495 (1985))(citing, inter alia, Cosme Nieves v. Deshler, 786 F.2d 445 (1st Cir. 1986)).

The First Circuit has also addressed the propriety of removal of a case in which concurrent jurisdiction exists. See Cosme Nieves, 786 F.2d at 450-51. Cosme Nieves involved an action brought pursuant to the Fair Labor Standards Act ("FLSA"). See id. The plaintiff argued that removal was barred by a provision of the FLSA. See id. at 450. The First Circuit disagreed. See id. at 451 ("[W]e find ourselves in agreement with those district courts that have allowed removal."). The court stated that "Congress has made it plain that the right of removal is to stand absent an express provision to the contrary ...." Id.; see also id. ("Section 1441(a) explicitly states that an express provision by Act of Congress is required to preclude the right to removal."). Accordingly, the First Circuit held that "since the district court ha[d] original jurisdiction of the suit, and nothing in the FLSA or the general removal statute expressly prohibits the removal of FLSA actions, the case was properly removed pursuant to 28 U.S.C. § 1441." Id.

The United States Supreme Court reached the same conclusion, again in the FLSA context, in Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691, 700, 123 S.Ct. 1882, 1887, 155 L.Ed.2d 923 (2003)(holding that the plaintiff's "case was properly removed under 28 U.S.C. § 1441"). The Supreme Court observed that "[t]here is no question that [the plaintiff] could have begun his action in the District Court," id. at 694, 123

S.Ct. at 1884, and that removal was "thus prohibited under § 1441(a) only if Congress expressly provided as much," id. The Court further noted that "[w]hen Congress has 'wished to give plaintiffs an absolute choice of forum, it has shown itself capable of doing so in unmistakable terms." Id. at 697, 123 S.Ct. at 1885-86 (quoting Cosme Nieves, 786 F.2d at 451).

In Breuer, the Supreme Court also stated that "whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception." Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. at 698, 123 S.Ct. at 1886. Defendants here have demonstrated that "the subject matter of [the] action qualifies it for removal," id., and Plaintiff has not demonstrated that "an express exception," id., to the general removal rule exists. Accordingly, the court concludes that removal of Plaintiff's federal claims was proper and that the existence of concurrent jurisdiction in state court, in the absence of an explicit statutory provision[5] to the contrary, does not defeat removal.

## II. Supplemental Jurisdiction over Plaintiff's State Law Claims

In addition to original jurisdiction over federal claims, federal courts possess supplemental jurisdiction over related state law claims:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United Sates Constitution. Such

[5] Although as noted previously, see n.4, Plaintiff has not in his Complaint cited to a specific statutory provision, see Complaint at 9 (alleging violations of "42 U.S.C. Section 1981 et seq."), none of the civil rights statutes referenced contains an express prohibition against removal, see 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 1987, 1988.

> supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> ....
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367 (2005); see also Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996)("A federal court exercising jurisdiction over an asserted federal-question claim must also exercise supplemental jurisdiction over asserted state-law claims that arise from the same nucleus of operative facts.").

Here, all of Plaintiff's claims stem from his arrest on July 24, 2004. See Complaint at 7 ("On or around July 24, 2004 ...") (Count One); id. at 8 ("Between July 24 and July 25, 2004 ...") (Count Two); id. ("Between July 24, 2004[,] and the date of filing of this complaint ...") (Count Three); id. at 9 ("Between July 24, 2004[,] and May 2, 2005 ...") (Count Four); id. ("Prior to and during the July 24, 2004[,] arrest ...") (Count Five); id. at 10 ("Between July 24, 2004[,] and January 22, 2005 ...") (Count Six); id. ("Between July 24, 2004[,] and the date of filing of this complaint ...") (Count Seven); id. (same) (Count Eight); id. at 11 (same) (Count Nine). Accordingly, the court concludes that the state and federal claims "derive from a common nucleus of operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Therefore, the court must exercise supplemental jurisdiction over Plaintiff's state law claims unless one of the exceptions listed in § 1367(c) applies. See McLaurin v. Prater, 30 F.2d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); McNerny v. Nebraska Pub. Power Dist., 309 F.Supp.2d 1109, 1117 (D. Neb. 2004)("When federal question jurisdiction exists over the case, and the court also has supplemental jurisdiction over plaintiff's state claims, the federal court does not have discretion to refuse jurisdiction except as provided in 28 U.S.C. § 1367(c)."); Alger v. Ganick, O'Brien & Sarin, 35 F.Supp.2d 148, 156 (D. Mass. 1999)("Section 1367(c) lists the circumstances wherein the district court may exercise that discretion and decline supplemental jurisdiction over the state law claims.").

Plaintiff contends that only "two (2) of nine (9) counts in the Plaintiff's complaint involve the federal civil rights statutes, 42 U.S.C. § 1983.[6] These two civil rights counts represent only a small portion of the issues in litigation in this case." Plaintiff's Mem. at 3. Thus, in Plaintiff's view, his state law claims predominate, and the court should decline to exercise supplemental jurisdiction. See Plaintiff's Mem. at 4. Defendants counter that five of the nine counts in the Complaint allege violations of Plaintiff's federal constitutional or statutory rights. See Town Defendants' Mem. at 4; Defendant Josephine Horton's Memorandum of Law in Support of Her Objection to Plaintiff's Motion to Remand ("Defendant Horton's Mem.") at 1.

Generally,

> a district court will find substantial predomination where a state claim constitutes the real body of a case, to which the federal claim is only an appendage-only where permitting litigation of all claims in the district

[6] See n.4.

> court can accurately be described as allowing a federal tail to wag what is in substance a state dog.

De Ascencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3rd Cir. 2003). In the instant matter, it cannot be said that Plaintiff's federal claims are mere appendages, see id., to his state claims. While it is true that only two counts are entitled "Violation of Civil Rights," Complaint at 9 (Counts Four and Five), a total of five counts include allegations of violations of Plaintiff's federal constitutional and/or statutory rights. Plaintiff claims that Defendants' actions "violated Rhode Island law, the Rhode Island Declaration of Rights, and the Fourth and Fourteenth Amendments to the United States Constitution"), see Complaint at 7 (Count One); id. at 8 (Count Two)(same); that, "[u]nder federal authority of 42 U.S.C. Section 1981 et seq., [Defendants' actions] ... were "in violation of the United States and Rhode Island Constitutions," id. at 9 (Count Four); that in failing to train and supervise their officers, the Town Defendants' actions "violated 42 U.S.C. Section 1981 et seq.," id. (Count Five); and that Defendants' "outrageous conduct violated Rhode Island law, the Rhode Island Declaration of Rights, and the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution," id. at 10 (Count Six).

As for Plaintiff's remaining four claims, those directed toward Defendant Horton for false reporting, malicious prosecution, and abuse of process (Counts Seven, Eight, and Nine, respectively) clearly relate to the events of July 24, 2004. See Complaint at 10 (alleging that between July 24, 2004, and the filing of the instant Complaint Defendant Horton "willfully, knowingly, and deliberately provided false information to the other Defendants, to DCYF, and to Rhode Island Family Court ...") (Count Seven); id. (alleging that Defendant Horton, between July 24, 2004, and the date of the filing of the Complaint, "without

probable cause, initiated criminal proceedings against the Plaintiff") (Count Eight); id. at 11 (alleging that Defendant Horton, between July 24, 2004, and the filing of the Complaint, "maliciously and deliberately misused or perverted court processes in an unjustified manner") (Count Nine). The same is true for the claim regarding his attempts to acquire public records pertaining to that arrest, see id. at 8 (alleging that the Town Defendants "unlawfully and tortiously denied the Plaintiff access to public records regarding his July 24, 2004[,] arrest.") (Count Three). Notably, although in Count Three Plaintiff characterizes the denial of records as a violation of the Rhode Island Access to Public Records Act ("APRA"), see id., in Count Four, entitled "Violation of Civil Rights," Complaint at 9, he alleges that Defendants "violat[ed] his liberty and property interests without due process of law by means of denying Plaintiff's access to records," id. Thus, the court concludes that "the scope of the issues presented, the damages alleged, and the evidence required to prove the state and federal claims are substantially the same." McNerny, 309 F.Supp.2d at 1118. "Such circumstances do not support an argument that the federal claim is dominated by or a mere appendage to the alleged state claims." McNerny, 309 F.Supp.2d at 1118.

Based on the foregoing, the court rejects Plaintiff's argument that his state law claims predominate. The state and federal claims are sufficiently interrelated, and the court, in its discretion, will not decline to exercise its supplemental jurisdiction on the basis of substantial predomination. Cf. Karstens v. Int'l Gamco, Inc., 939 F.Supp. 1430, 1441 (D. Neb. 1996)("[E]ven assuming the state claim did substantially predominate, subsection (c) leaves the decision whether to exercise supplemental jurisdiction within the Court's discretion. Using that discretion, the Court will exercise supplemental

jurisdiction in this case. The state and federal claims are sufficiently interrelated, and [the plaintiff] should not be forced to sue in two different courts.").

Plaintiff additionally contends that:

> This case involves at least two relatively complex areas of state law which are undeveloped, notably the Rhode Island Access to Public Records Act (APRA) (R.I.G.L. § 38-2-3) and its application to police investigation records, and Rhode Island state law governing internal state administration of domestic violence complaints and state agency responses, a traditional area of state court administration.

Plaintiff's Mem. at 4-5 (case citations omitted). The Town Defendants submit that "[P]laintiff's claim under the Access to Public Records Act does not involve such a novel or complex issue as to divest this court of jurisdiction over the claim." Town Defendants' Mem. at 5.

The APRA provides, in relevant part:

> (a) Except as provided in § 38-2-2(4),[7] all records

---

[7] Section 38-2-2(4) contains "numerous exemptions," Pawtucket Teachers Alliance Local No. 920, AFT, AFL-CIO v. Brady, 556 A.2d. 556, 558 (R.I. 1989). Relevant to the instant issue are those contained in § 38-2-2(4)(D):

> All records maintained by law enforcement agencies for criminal law enforcement and all records relating to the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal investigation by any law enforcement agency. Provided, however, such records shall not be deemed public only to the extent that the disclosure of the records or information (a) could reasonably be expected to interfere with investigations of criminal activity or with enforcement proceedings, (b) would deprive a person of a right to a fair trial or an impartial adjudication, (c) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (d) could reasonably be expected to disclose the identity of a confidential source, including a state, local, or foreign agency or authority, or any private institution which furnished information on a confidential basis, or the information furnished by a confidential source, (e) would

> maintained or kept on file by any public body, whether or not those records are required by any law or by any rule or regulation, shall be public records and every person or entity shall have the right to inspect and/or copy those records at such reasonable time as may be determined by the custodian thereof.

R.I. Gen. Laws § 38-2-3 (1997 Reenactment)(2004 Supp.). However, the Rhode Island Supreme Court has noted that "the dual purpose[8] of APRA makes clear that the Legislature did not intend to bestow upon the public *carte blanche* access to all publicly held documents." Pawtucket Teachers Alliance Local No. 920, AFT, AFL-CIO v. Brady, 556 A.2d. 556, 558 (R.I. 1989); see also Providence Journal Co. v. Kane, 577 A.2d 661, 663 (R.I. 1990)(citing Pawtucket Teachers Alliance Local No. 920 v. Brady).

Although Plaintiff characterizes the state of the law regarding the APRA as "undeveloped," Plaintiff's Mem. at 4, the state and federal courts have addressed the APRA on numerous occasions in several different contexts. See, e.g., Rhode Island

---

> disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions or (f) could reasonably be expected to endanger the life or physical safety of any individual. Records relating to management and direction of a law enforcement agency and records or reports reflecting the initial arrest of an adult and the charge or charges brought against an adult shall be public.

R.I. Gen. Laws § 38-2-2(4)(D) (1997 Reenactment)(2004 Supp.).

[8] According to the APRA:

> The public's right to access to public records and the individual's right to dignity and privacy are both recognized to be principles of the upmost importance in a free society. The purpose of this chapter is to facilitate public access to public records. It is also the intent of this chapter to protect from disclosure information about particular individuals maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of personal privacy.

R.I. Gen. Laws § 38-2-1 (1997 Reenactment)(2004 Supp.).

Ass'n of Realtors v. Whitehouse, 51 F.Supp.2d 107, 109 (D.R.I. 1999)(addressing constitutionality of APRA's commercial use prohibition), aff'd, 199 F.3d 26 (1st Cir. 1999); Costa v. Remillard, 160 F.R.D. 434, 435 (D.R.I. 1995)(addressing denial of request for personnel records of defendants, both North Smithfield police officers); Direct Action for Rights & Equality v. Gannon, 713 A.2d 218 (R.I. 1998)(addressing denial of request for access to Providence Police Department records regarding civilian complaints of police misconduct); Edward A. Sherman Publ'ing Co. v. Carpender, 659 A.2d 1117 (R.I. 1995)(addressing denial of request to Portsmouth School Committee seeking identities of Portsmouth teachers who received layoff notices); Providence Journal Co. v. Sundlun, 616 A.2d 1131, 1132 (R.I. 1992)(addressing denial of request for access to certain state government records); Providence Journal Co. v. Kane, 577 A.2d at 661 (addressing denial of request for access to certain records relating to State employees); Pawtucket Teachers Alliance Local No. 920 v. Brady, 556 A.2d. at 557 (R.I. 1989)(addressing denial of request for certain records from the Pawtucket School Department); The Rake v. Gorodetsky, 452 A.2d 1144, 1146 (R.I. 1982)(addressing denial of request for copies of all Providence Police Department hearing officers' reports regarding civilian complaints of police brutality); Providence Journal Co. v. Pine, No. C.A. 96-6274, 1998 WL 356904, at *1 (R.I. Super. June 24, 1998)(addressing denial of request for access to records of gun permits issued). In a recent case, the Rhode Island Superior court upheld the denial of a request for West Warwick Police and Fire Department communications, a Department of Human Services application list, a victim location document, and certain West Warwick police reports. See Providence Journal Co. v. Town of West Warwick, KC 03-207, C.A. No. 03-2697, 2004 R.I. Super. LEXIS 136, at *1-2 (R.I. Super. July 22, 2004). Regarding the police

reports, which included incident reports, police officer narratives, evidence logs, a search warrant inventory, and witness statements, the court stated that:

> These records were specifically developed and prepared for criminal investigative purposes and what later became enforcement proceedings as a result of indictments returned by a statewide Grand Jury. As such, the disclosure of these records necessarily would interfere with the criminal prosecutions now pending and arguably could impact the 'fair trial' rights of those charged with crimes. Any disclosure of these records should be made in the context of the criminal prosecutions as they unfold.

Providence Journal Co. v. Town of West Warwick, 2004 R.I. Super. LEXIS 136, at *10-11.

Clearly, the law regarding the APRA is not "undeveloped," as Plaintiff asserts, nor is the APRA issue so "novel or complex," 28 U.S.C. § 1367(c)(1), as to require this court to refrain from exercising supplemental jurisdiction over Plaintiff's APRA claim. The court reaches this conclusion for several reasons. First, as the Town Defendants observe, this court is capable of examining the plain language of the statute and applying it to the facts at hand. See Town Defendants' Mem. at 6. Second, the Rhode Island state courts have provided some guidance, and additional guidance may be found, if needed, in federal cases addressing the Freedom of Information Act, see Pawtucket Teachers Alliance Local No. 920 v. Brady, 556 A.2d. at 558 n.3 ("Because APRA generally mirrors the Freedom of Information Act, 5 U.S.C.A. § 552 (West 1977), we find federal case law helpful in interpreting our open record law."). Third, although Plaintiff asserts that "Defendants' compliance with the RI APRA will establish new law with regard to the compliance of state police agencies with the Act," Plaintiff's Mem. at 6, in his Complaint Plaintiff does not seek relief which would result in the establishment of new law with respect to the APRA. Rather, Plaintiff demands "judgment against

the Defendants," Complaint at 11, damages "in an amount sufficient to invoke the jurisdiction of the court," id., and "appropriate punitive damages, fines and reasonable attorney fees," id. Fourth, as noted previously, Plaintiff includes the denial of access to public records in Count Four: Violation of Civil Rights and describes the denial as a violation of his liberty and property interests without due process of law. See Complaint at 9.

In a related argument, presumably referring to the false reporting (Count Seven), malicious prosecution (Count Eight), and abuse of process (Count Nine) claims, Plaintiff states that "[t]his case also involves state family court orders, a divorce action still pending, and a custody decree still in effect in state family court, all issues withing the proper and traditional domains of state courts," Plaintiff's Mem. at 6, and that because "the family law and domestic-violence response procedures to be litigated in this case involve sensitive matters of state administration[,] [f]ederal courts should avoid retaining jurisdiction over such state claims if there is a possibility that novel issues of state law may arise," id. at 6-7. However, aside from citing cases supporting the principles that family law is traditionally an area of state, not federal, concern, see id. at 6 (citing United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995); DeSylva v. Ballantine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); United States v. Bailey, 115 F.3d 1222 (8th Cir. 1997); In Re MacDonald, 755 F.2d 715, 717 (9th Cir. 1985)), and that federal courts should avoid "needless decisions of state law," id. at 7 (citing Girard v. 94th Street & Fifth Ave. Corp., 530 F.2d 66, 72 (2nd Cir. 1976)), Plaintiff does not develop this argument further. Accordingly, the court is unpersuaded by it. Cf. Massey v. Stanley-Bostitch, Inc., 255 F.Supp.2d 7, 16 (D.R.I. 2003)("It is not enough merely

to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on the bones. As [the First Circuit] recently said in a closely analogous context: Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly or forever hold its peace.")(quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990))(internal quotation marks omitted); see also Zannino, 895 F.2d at 17 (following "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Finally, Plaintiff asserts that "severe inconvenience to the Plaintiff and the other parties," Plaintiff's Mem. at 7, requires remand. Specifically, Plaintiff points to the fact that "[t]his court is farther removed from the residences of all the parties than the Newport County State Court, and its location in urban Providence requires higher cost and greater inconvenience for all parties," id. at 7, and the fact that Plaintiff's "chosen counsel[9] ... is not admitted to practice in this federal court, id.; see also Affidavit of Roger Isaac Roots, Esquire, at 2.

As the Town Defendants observe, see Town Defendants' Mem. at 6, such convenience concerns only "apply when the district court views the state claim as predominant or novel or complex under subsections 1367(c)(1) and (2) as well as when the district court dismisses the federal claim and re-examines its jurisdiction over the remaining state law claims under section 1367(c)(3)," Alger v. Ganick, O'Brien & Sarin, 35 F.Supp.2d 148, 156 (D. Mass. 1999)(citations omitted); see also Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)("In a federal-

[9] A different attorney represented Plaintiff on the brief and at the July 20, 2005, hearing in conjunction with the instant Motion.

question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion. In deciding whether or not to retain jurisdiction on such an occasion [after dismissal of the federal claim], the trial court must take into account concerns of comity, judicial economy, convenience, fairness, and the like.")(internal citation omitted). Because the court has not declined to exercise supplemental jurisdiction on the basis of substantial predominance or the presence of a novel or complex area of state law, and the foundational federal claims have not been terminated, the court need not address Plaintiff's arguments regarding convenience.

**Conclusion**

For the foregoing reasons, I recommend that Plaintiff's Motion to Remand be denied. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
September 12, 2005